UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **DOCKET NO. 07-30005** |
| **VERSUS** | * | **JUDGE JAMES** |
| **NELSON DOMINGUEZ** | * | **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Suppress filed by defendant, Nelson Dominguez. [doc. # 14]. For reasons assigned below, it is recommended that the motion be **DENIED**.

### Background

The evidence presented at a hearing held on Friday, May 18, 2007, demonstrated as follows.[1] On the evening of November 19, 2006, Deputy David Crain and Corporal John Asmussen of the Ouachita Parish Sheriff's Office were working "traffic" as members of the Special Crimes Apprehension Team ("SCAT").[2] The two deputies were in a marked squad car on the Camp Road median south of the I-20 interchange when Deputy Crain observed a beige Allegro Bay motor home or recreational vehicle ("RV") exit the interstate from the eastbound lane. While Deputy Crain watched the RV proceed south along Camp Road, he noticed it stray onto the shoulder with the passenger-side tires touching the grass. Accordingly, Deputy Crain initiated a traffic stop.

---

[1] The sole evidence adduced at the hearing was the testimony of Deputy David Crain.

[2] The special unit was formed to interdict street level narcotics, prostitution, and burglary.

As Deputy Crain approached the passenger side door of the RV, the driver and sole occupant, Nelson Dominquez opened the door. Deputy Crain noticed a strong deodorizer smell emanating from the RV. Crain's training and experience taught him that deodorizers were often used to mask the presence of illegal substances. Upon request, Dominguez produced his Florida driver's license, insurance, and registration. Crain asked Dominguez why he had run off the road, and Dominguez said it was because he had been watching Crain in his rearview mirror. Crain asked Dominguez why he was on Camp Road; Dominguez replied that he had exited the interstate to buy gasoline. From his vantage point, Crain was able to see that the fuel gauge reflected that the RV's gas tank was only half empty.[3] Crain also observed two Renuzit air fresheners hanging from the ceiling in the living area of the RV.

During the exchange, Dominguez appeared extremely nervous; his hands were shaking and his carotid artery was visibly pulsing in his neck. In response to questioning, Dominguez stated that he was returning to Miami, Florida, from a friend's wedding in Amarillo, Texas. However, he could not recall the friend's name. Crain then asked Dominguez why he had used his RV for the trip, given the high price of gas and the poor fuel economy of an RV. Dominguez had no response, and merely became more nervous.

Due to the above-referenced circumstances, Crain suspected that the RV contained illegal weapons or narcotics. Thus, Crain asked for and obtained Dominguez's oral consent to search the

---

[3] Defense counsel elicited testimony tending to suggest that it may have been difficult for Deputy Crain to see the fuel gauge from his vantage point. However, Crain maintained that he was able to see the front of the vehicle from where he was standing.

vehicle for marijuana, cocaine, and methamphetamines.[4]  During the search, Corporal Asmussen, noticed some saw dust and wood shavings on the floor next to the bed.  Crain attempted to raise the bed, but noticed that the corners had been screwed down with after market screws.  After obtaining a phillips head screwdriver, Crain removed the screws and uncovered several trash bags, duffel bags, and bricks of suspected marijuana.  Dominguez was then placed under arrest and read his Miranda rights.  Crain issued Dominguez a citation for improper lane use.  Dominguez later admitted that he was transporting marijuana.

## Law and Analysis

The Fourth Amendment of the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.  The reasonableness of traffic stop searches and seizures under the Fourth Amendment is analyzed in accordance with the framework set forth by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968).  Under *Terry*, the analysis is two-tiered:  (1) whether the officer's action of stopping the vehicle was justified at its inception; and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop.  *United States v. Shabazz*, 993 F.2d 431, 435 (5th Cir. 1993) (citing *Terry*, 392 U.S. at 19-20); *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001).

In *Whren v. United States*, the Supreme Court unanimously upheld a traffic stop in which an

---

[4]  Although Crain was unable to estimate how much time had elapsed between the initial stop and his request to search the vehicle, he was able to state that he was requesting consent to search when he heard over the radio that Dominguez's license check and warrant check were negative.

officer observed a defendant commit a traffic violation. *Whren v. United States*, 517 U.S. 806 (1996). In accordance with its long line of cases, the Supreme Court held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. The Supreme Court flatly rejected an invitation by the defendant to look to the subjective motivation of the police officer at the time of the stop. In *Whren*, the court found the stop reasonable under the Fourth Amendment because the officers had probable cause to believe that petitioners had violated the traffic code. The officer had observed the violation firsthand. *Id.* at 818; *see also United States v. Harrison*, 918 F.2d 469 (5th Cir. 1990).

To the extent that defendant challenges the propriety of the initial stop, his claim lacks merit. Pursuant to *Terry* and *Whren*, stopping a vehicle for a traffic violation is justified so long as probable cause exists. *See Whren*, 517 U.S. at 810; *Terry*, 392 U.S. at 19-20. It remains uncontroverted that Deputy Crain observed the RV stray onto the shoulder, with its passenger tires actually touching the grass. In Louisiana, a vehicle which partially leaves its lane of travel and crosses the fog line either at the center of a divided highway or on the right hand shoulder of the road constitutes probable cause to believe that a traffic violation for improper lane use has occurred. *State v. Waters*, 780 So.2d 1053, 1056 (La. 2001) (citing, *State v. Inzina*, 728 So.2d 458, 466 (La. App. 2d Cir.12/9/98)).[5]

Under the second prong of the *Terry* inquiry, the detention of a vehicle's occupants must be temporary and last no longer than necessary to effectuate the purpose of the stop. *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004)(*en banc*). The question the court must answer is whether Crain's actions after he legitimately stopped Dominguez were ". . . reasonably related to the

---

[5] *See also*, La. R. S. 32.79.

circumstances that justified the stop, or to dispelling his reasonable suspicion developed during the stop." *Id.* This is because "a detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *Brigham*, 382 F.3d at 507 (citations omitted).

The list of actions that a police officer may take pursuant to a routine traffic stop include, examining the driver's license and vehicle registration; running a computer check to investigate whether the driver has any outstanding warrants or if the vehicle was stolen; asking the driver to exit the vehicle; and asking the driver and any passengers about the purpose and itinerary of their trip, as well as other unrelated questions. *See generally, Brigham*, 382 F.3d at 508; *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002); *United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999); and *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993). Detention during these actions is reasonable under the Fourth Amendment.

Pursuant to the valid traffic stop, Crain was permitted to initiate a check of Dominguez's driver's license and criminal history. *See Brigham*, 382 F.3d at 508; *Linkous*, 285 F.3d at 719; *Dortch*, 199 F.3d at 198; *Shabazz*, 993 at 437. Crain was further permitted to question Dominguez about where he was coming from and where he was going.[6] In this case, the criminal background check did not return until Crain had already asked Dominguez for consent to search the RV. Thus,

---

[6] The Fifth Circuit has routinely held that ". . . mere police questioning does not constitute a seizure." *Shabazz*, 993 F.2d at 436. "Further, when questioning takes place while officers are waiting for the results of a computer check--and therefore does not extend the *duration* of the stop--the questioning does not violate Terry." *United States v. Crain*, 33 F.3d 480, 485 (5th Cir. 1994)(emphasis in original) (citing *Shabazz*, 993 F.2d 431, 436-437 (5th Cir. 1993)).

until the background check had been completed, the temporary detention and questioning of Dominguez did not transgress the protections afforded by the Fourth Amendment. *See, Brigham, supra*.

The undersigned also finds that the detention and questioning were further justified by Crain's reasonable suspicion that Dominguez was transporting contraband. Crain testified that his suspicions were aroused because: 1) Dominguez was the sole occupant of the RV; 2) Dominguez could not remember the name of the friend whose wedding he attended after driving cross-country in an RV; 3) he was extraordinarily nervous; 4) he exited the interstate at an interchange with no apparent commercial establishments or signs indicating that such were present, ostensibly to re-fuel when he still had half a tank of gas; and 5) the RV emitted a strong scent of deodorizers which are typically used to mask the presence of illegal narcotics. These circumstances suffice to warrant Crain's suspicion, based on his experience as a law enforcement officer, that Dominguez was transporting illegal substances. *See Brigham*, 382 F.3d at 509.

In his motion, Defendant does not specifically challenge the voluntariness of his consent to the search. Nonetheless, the court will briefly address this issue. Typically, the government enjoys the burden of proving voluntary consent by a preponderance of the evidence. *Shabazz*, 993 F.2d at 438 (citing *United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir.1991). However, "the government's burden to prove consent by [a] preponderance of the evidence is not as heavy as it would have been had a Fourth Amendment violation preceded the consent." *United States v. Estrada*, 459 F.3d 627, 633 (5th Cir. 2006) (citing *United States v. Dortch*, 199 F.3d 193, 201 (5th Cir. 1999)).

"The voluntariness of consent is a question of fact to be determined on the totality of the

circumstances." *Id.* To make this determination, courts look to the following factors: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police tactics; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) his education level and intelligence; and (6) his belief that no incriminating evidence will be found. *Id.* Although all six factors are relevant, no single factor is dispositive. *Id.*

In the case *sub judice*, the first factor leans in favor of the defendant, because at the time that Crain asked Dominguez for consent to search the RV, the criminal background check had not yet returned, and there is no indication that Crain had yet written a citation. Thus, Dominguez likely felt that he was not free to depart. However, there was no evidence of coercive police tactics. Moreover, Dominguez fully cooperated with Deputy Crain. No evidence was adduced relative to the fourth, fifth, and sixth factors. Upon due consideration of these factors, the court finds that the consent to search was voluntarily conferred.

For the foregoing reasons,

**IT IS RECOMMENDED** that defendant's motion to suppress [doc. # 14] be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 21st day of May 2007.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE